**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Best Western International Incorporated,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Twin City Lodging LLC, et al.,<br><br>　　　　　Defendants. | No. CV-18-03374-PHX-SPL<br><br>**ORDER** |

Before the Court is Plaintiff Best Western International Incorporated's (the "Plaintiff") Motion to Dismiss Defendant/Counter-Claimant's First Amended Counterclaim (Doc. 22) (the "Motion"). The Motion was fully briefed on February 11, 2019. (Docs. 28, 30) The Court's ruling is as follows.

**I.　Background**

On September 16, 2016, Defendant Twin City Lodging, LCC (the "Defendant") purchased a Best Western Hotel in Mankato, Minnesota. (Doc. 16 at 11) On September 29, 2016, the Defendant entered into a contract (the "Membership Agreement," Doc. 1-2 at 13−22) with the Plaintiff, giving the Defendant a license to operate the hotel under Plaintiff's Best Western brand. (Doc. 16 at 10; Doc. 1-2 at 13−14, 20) The Membership Agreement required both parties to act in accordance with Best Western's Bylaws & Articles (Doc. 1-2 at 24−51), Rules & Regulations (Doc. 1-2 at 53−91), and any other regulatory documents (collectively, the "Regulatory Documents"). (Doc. 16 at 2; Doc. 1-2

at 13)

The Defendant alleges a long history of the Plaintiff performing quality inspections of the Defendant's hotel in order to assert violations of the Membership Agreement and the Regulatory Documents. (Doc. 16 at 12, 14–19) On one occasion, the Defendant alleges that Michelle Orion, the Best Western District Manager who oversaw the Defendant, called and emailed the Defendant in March 2017 to inform the Defendant that the Plaintiff was terminating the Membership Agreement. (Doc. 16 at 15) The Defendant alleges that Orion offered false reasons for the termination, changed the reasons for the termination, and did not offer a hearing to allow the Defendant to contest the termination, pursuant to the terms of the Membership Agreement. (Doc. 16 at 15−18) However, the Plaintiff did not cancel the Membership Agreement after these incidents. (Doc. 16 at 18)

In October 2017, the Plaintiff sent the Defendant a letter indicating that there was an issue related to customer complaints and the Defendant's "Customer Complaint Ratio" as defined by the "Customer Care Policy". (Doc. 16 at 19, 20; Doc. 1-2 at 99–100) Pursuant to the Membership Agreement and the Regulatory Documents, the minimum allowable Customer Complaint Ratio is .17. (Doc. 16 at 4) On February 9, 2018, the Plaintiff sent the Defendant a letter stating that its customer complaint ratio for the previous 90 days was .44138, and, accordingly, that the Defendant's hotel was being placed in probationary status. (Doc. 1-3 at 2; Doc. 16 at 20) The letter also advised that if Defendant did not come into compliance with the provision within 90 days, the Defendant's hotel would be placed in member-with-conditions review status, and the Membership Agreement could be subject to cancellation. (Doc. 1-3 at 3; Doc. 16 at 20)

On June 14, 2018, the Plaintiff sent the Defendant another letter, notifying the Defendant that the Plaintiff was considering cancelling its membership due to its non-compliance with the Customer Complaint Ratio provision of the Regulatory Documents. (Doc. 16 at 19; Doc. 1-3 at 13) The letter stated that the Defendant could request a hearing to contest its probationary status, and the Defendant attended a hearing in front of Best Western's Board of Directors on July 25, 2018, to argue that its Customer Complaint Ratio

was being misrepresented. (Doc. 1-3 at 13−14; Doc. 16 at 20−22)  The Plaintiff notified the Defendant that the Membership Agreement was terminated on August 7, 2018. (Doc. 16 at 22)

On October 19, 2018, the Plaintiff filed its complaint against the Defendant, alleging causes of action for breach of contract, trademark infringement, false designation of origin, and unfair competition. (Doc. 1)  On December 18, 2018, the Defendant filed its first amended answer and counterclaims for violations of the Minnesota Franchise Act ("MFA"), breach of the covenant of good faith and fair dealing, and breach of contract. (Doc. 16)  On January 16, 2019, the Plaintiff filed the Motion seeking to dismiss the Defendant's counterclaims. (Doc. 22)

**II.    Legal Standard**

To survive a motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2); *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The Court may dismiss a complaint for failure to state a claim under Federal Rule 12(b)(6) for two reasons: (1) lack of a cognizable legal theory, and (2) insufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

In deciding a motion to dismiss, the Court must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).  In comparison, "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences" are not entitled to the assumption of truth, and "are insufficient to defeat a motion to dismiss for failure to state a claim." *Id.*; *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010).  A plaintiff need not prove the case on the pleadings to survive a motion to dismiss. *OSU Student All. v. Ray*, 699 F.3d 1053, 1078 (9th Cir. 2012).

A court ordinarily may not consider evidence outside the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *Zemelka v. Trans Union LLC*, 2019 WL 2327813, at 1 (D. Ariz. May 31, 2019) (*citing United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003)). "A court may, however, consider materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *Id*. A court should also consider documents referenced in the complaint. *No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 fn. 2 (9th Cir. 2003). Allegations in the complaint that contradict referenced documents need not be accepted as true. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). Additionally, "[e]ven if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Lovelace v. Equifax Info. Servs. LLC*, 2019 WL 2410800, at 1 (D. Ariz. June 7, 2019) (*citing Ritchie*, 342 F.3d at 908). A plaintiff need "not explicitly allege the contents of that document in the complaint" for the court to consider it, as long as the "plaintiff's claim depends on the contents of [the] document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). "[T]he district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908.

**III. Analysis**

   **A. <u>Count I – Violations of Minnesota Franchise Act</u>**

The Defendant alleges a counterclaim stating that the Plaintiff violated various provisions of the MFA through (i) failing to register under the MFA; (ii) terminating the Membership Agreement without providing the Defendant with the Plaintiff's reasons for termination 90 days in advance and without good cause, and (iii) discriminating against the Defendant. (Doc. 16 at 25–27) Each issue will be addressed in turn.

1. <u>Applicability of the MFA</u>

The first issue before the Court is whether the Defendant's counterclaim plausibly alleges that the Plaintiff is subject to the MFA. The Plaintiff argues that it is not bound by the terms of the MFA because it is "a nonprofit marketing cooperative," not a franchise. (Doc. 22 at 6) The MFA applies to a franchise relationship "when a sale or offer to sell is made in [Minnesota], when an offer to purchase is made and accepted in [Minnesota], or when the franchise is to be located in [Minnesota]." Minn. Stat. § 80C.19. Under the MFA, a franchise is defined by three elements: "(1) A right granted to the franchisee to engage in business using the franchiser's trade name or other commercial symbol, (2) a 'community of interest' in the marketing of goods or services between the franchisee and franchiser, and (3) a 'franchise fee' paid by the franchisee." *Martin Investors, Inc. v. Vander Bie*, 269 N.W. 2d 868, 874 (Minn. 1978) (citing Minn. Stat. § 80C.01, subd. 4(a)). Where these three elements are satisfied, a franchise relationship exists, regardless of the terminology used by the parties. *Upper Midwest Sales Co. v. Ecolab, Inc.*, 577 N.W. 2d 236, 241 (Minn. Ct. App. 1998). A franchisor cannot avoid compliance with the provisions of the MFA through a contractual choice-of-law provision. Minn. Stat. § 80C.21.

The Defendant's counterclaim offers some conclusory statements reciting that (i) the Membership Agreement granted the Defendant "the right to engage in a business offering goods or services using Plaintiff's trade name, trademark, service mark, logotype, advertising and/or other commercial symbols and related characteristics"; (ii) the parties "shared a common community of interest in marketing goods and services"; and (iii) the Defendant "paid a franchise fee". (Doc. 16 at 25) However, the Court finds that the Defendant has pleaded facts sufficient to support these statements through incorporating the facts admitted in its answer to the Plaintiff's complaint. (Doc. 16 at 9) The Defendant pleads facts sufficient to support that it entered into the Membership Agreement with the Plaintiff and that the Membership Agreement permitted the Defendant to use the Plaintiff's trademarks and branding materials. (Doc. 16 at 2, 10) Additionally, the Membership Agreement referenced in the counterclaim expressly granted the Defendant the right to use

the "Best Western" name and other identifying marks in connection with its property. (Doc. 1-2 at 14)

The MFA does not define "community of interest". Minn. Stat. Ann. § 80C.01. However, other courts have interpreted the phrase in the context of similar statutes in other states. For example, interpreting a New Jersey franchise statute, the U.S. Court of Appeals for the Third Circuit found that for a community of interest to exist, "(1) the [franchisee's] investments must have been 'substantially franchise-specific', and (2) the [franchisee] must have been required to make these investments by the parties' agreement or the nature of the business." *Cooper Distrib. Co. v. Amana Refrigeration*, 63 F.3d 262, 269 (3rd Cir. 1995) (citations omitted); see also *Ziegler Co. v. Rexnord, Inc.*, 407 N.W. 2d 873, 879 (Wisc. 1987) (holding a community of interest could be characterized by cooperation between parties, coordination of activities, and shared goals); *Neptune T.V. & Appliance Serv., Inc. v. Litton Microwave Cooking Prods. Div., Litton Sys., Inc.*, 462 A.2d 595, 601 (N.J. Super. Ct. App. Div. 1983) (holding a community of interest did not exist where the arrangement lacked a "symbiotic character" and "the consequent vulnerability of the alleged franchisee to an unconscionable loss of his tangible and intangible equities").

In this case, the Defendant's pleading makes another conclusory statement regarding this element. (Doc. 16 at 10, 25) However, the Regulatory Documents referenced in the counterclaim show a substantial number of investments were required in order to maintain Best Western membership, in addition to cooperation and coordination between the Plaintiff and members. (Doc. 1-2 at 13) Moreover, the Court finds that the Plaintiff and the Defendant had a shared interest in operating a successful hotel under the Best Western name. Accordingly, the Court finds that the Defendant has set forth sufficient facts to plead that there was a community of interests between the parties.

Lastly, a franchise fee is "any fee or charge that a franchisee or subfranchisor is required to pay or agrees to pay for the right to enter into a business or to continue a business under a franchise agreement." Minn. Stat. § 80C.01, subd. 9. The Defendant's pleading contains the conclusory statement that it paid a franchise fee. (Doc. 16 at 25) On

6

its own, this statement is insufficient, but Best Western's Bylaws require "Entrance Fees to be paid by Applicants" and "Annual Dues to be paid by Members eligible for continuing Memberships." (Doc. 1-2 at 32) Considering the Defendant was a Best Western member for almost two years, the Court can reasonably infer that Defendant paid the entrance fee. Because the entrance fee was required in order to become a Best Western member and operate a hotel under the Best Western license, it meets the definition of a franchise fee, and the Court finds this element is plausibly met by Defendant's pleading. Accordingly, the Court finds that the Defendant pleaded sufficient facts to plausibly allege that the Plaintiff is subject to the MFA.

### 2. Failure to Register Franchise

The Defendant claims that the Plaintiff has failed to register as a franchise under the MFA. (Doc. 16 at 25) The MFA states, "No person may offer or sell any franchise in [Minnesota] unless there is an effective registration statement on file." Minn. Stat. § 80C.02. The remedy for such failure is rescission or damages. Minn. Stat. § 80C.17. There is no dispute that the Plaintiff did not file a registration statement under the definition of the MFA prior to selling Defendant its franchise rights. (Doc. 22 at 6) Thus, taking the facts in the light most favorable to the Defendant, the Court finds that the Defendant properly pleaded a violation of the MFA based on failure to register.

### 3. Termination Without Requisite Notice or Good Cause

The Defendant next claims that the Plaintiff violated the MFA by unfairly terminating its franchise. (Doc. 16 at 25–26) The MFA prohibits certain "unfair and inequitable" practices including termination or cancellation of a franchise under certain conditions. Minn. Stat. § 80C.14. A party generally may not terminate a franchise unless (1) they provide "written notice setting forth all the reasons for the termination or cancellation at least 90 days in advance of termination" and (2) the franchisee "fails to correct the reasons stated for termination . . . within 60 days of receipt of the notice." Minn. Stat. § 80C.14, subd. 3(a). A franchise also may not be terminated without "good cause," which is defined as "failure by the franchisee to substantially comply with the

material and reasonable franchise requirements imposed by the franchisor." Minn. Stat. § 80C.14, subd. 3(b). If any one of these conditions is not met, the termination is unfair under the MFA. See *Modern Comput. Sys., Inc. v. Modern Banking Sys., Inc.*, 858 F.2d 1339, 1344–45 (8th Cir. 1988).

The Defendant's counterclaim alleges that the Plaintiff terminated the Membership Agreement in August 2018 without proper notice under the MFA. (Doc. 16 at 22) After a series of threatened terminations beginning in March 2017, the Defendant received a letter terminating the Membership Agreement on August 7, 2018. (Doc. 16 at 22) The Defendant alleges that the Membership Agreement was terminated without the 30-day notice required by the Regulatory Documents, thus violating the 90-day notice requirement of the MFA. (Doc. 16 at 23) The Defendant also alleges that the Plaintiff's reasons for terminating the Membership Agreement were faulty and based on misrepresented facts. (Doc. 16 at 18) The Defendant further alleges that a low Customer Complaint Ratio is not a proper reason for termination of the Membership Agreement under the contract's terms. (Doc. 16 at 22–24) Accordingly, the Court finds that the Defendant has set forth sufficient factual allegations to plausibly allege that that Plaintiff terminated the Membership Agreement without proper notice and without good cause as required under the MFA.

4. Discrimination

The Defendant's final claim under the MFA is that the Plaintiff unlawfully discriminated against the Defendant's franchise. Under Minn. R. 2860.4400(B), as authorized by Minn. Stat. § 80C.17, subd. 1, it is "unfair and inequitable" to "discriminate between franchisees in the charges offered or made for royalties, goods, services, equipment, rentals, advertising, services, or in any business dealing." Minn. R. 2860.4400(B). While there does not appear to be any case law interpreting this rule, the U.S. Court of Appeals for the Seventh Circuit interpreted a similar provision under Indiana law stating, "[P]roof of 'discrimination' requires a showing of arbitrary disparate treatment among similarly situated individuals or entities." *Canada Dry Corp. v. Nehi Beverage Co.*

*of Indianapolis*, 723 F.2d 512, 521 (7th Cir. 1983). The Seventh Circuit's interpretation in the franchise context is a similar standard to what the Minnesota courts have used to analyze equal protection cases under the state constitution. *Northwestern Coll. v. Arden Hills*, 281 N.W. 2d 865, 869 (Minn. 1979). If the Court were to use the Seventh Circuit's standard, the Defendant would need to plead sufficient factual content to support the inference that it was arbitrarily treated differently than similarly situated franchisees.

The Defendant fails to allege that it was arbitrarily treated differently from other franchisees. While the Defendant makes several detailed allegations about why the Plaintiff heavily scrutinized the Defendant's franchise, at no point does the Defendant allege facts demonstrating that it was being treated differently than any other comparable franchise. Instead, the Defendant makes conclusory statements about its expectations under the Regulatory Documents such as "[the Regulatory Documents] provided members with the right to have impartial, standardized and nondiscriminatory inspection procedures." (Doc. 16 at 24) The Defendant further relies on the conclusory statement that the Plaintiff discriminated against the Defendant by "treating [the Defendant] different from other similarly situated franchisees including, but not limited to, the grounds utilized by Plaintiff for terminating [the Defendant's] franchise". Without more, the Court finds that the Defendant has failed to plausibly allege a claim for discrimination under the MFA, and the Motion will be granted as to the discrimination claim under Count 1.

### B. Count II – Breach of Implied Covenant of Good Faith and Fair Dealing

The threshold issue for the breach of contract and breach of good faith and fair dealing claims is whether Arizona or Minnesota law applies. Both Arizona and Minnesota generally enforce choice-of-law provisions agreed to in a contract. *Cardon v. Cotton Lane Holdings*, 841 P.2d 198, 203 (Ariz. 1992); *Milliken & Co. v. Eagle Packaging Co.*, 295 N.W. 2d 377, 380 (Minn. 1980). MFA § 80C.21 invalidates choice-of-law provisions when they purport to waive compliance with the MFA, but the MFA does not impact choice-of-law provisions as applied to common-law claims. *Moxie Venture L.L.C. v. UPS Store, Inc.*, 156 F. Supp. 3d 967, 971 (D. Minn. 2016). In this case, the Membership Agreement

executed between the parties contains a clause stating that the Membership Agreement and Regulatory Documents "shall be governed and construed according to the laws of the State of Arizona." (Doc. 1-2 at 18) Thus, the Court will apply Arizona law to the Defendant's breach of contract and breach of good faith and fair dealing counterclaims.

Under Arizona law, the covenant of good faith and fair dealing is implied in every contract, and the duty arises by virtue of a contractual relationship. *Snyder v. HSBC Bank, USA, N.A.*, 873 F. Supp. 2d 1139, 1151–52 (D. Ariz. 2012) (quoting *Silving v. Wells Fargo Bank, N.A.*, 800 F. Supp. 2d 1055, 1070 (D. Ariz. 2011)). The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship. *Snyder*, 873 F. Supp. 2d at 1152. To state a claim for breach of the covenant of good faith and fair dealing, a complaint must first demonstrate the existence of a contractual obligation. *Cavan v. Maron*, 182 F. Supp. 3d 954, 961 (D. Ariz. 2016). A party can breach the covenant of good faith and fair dealing by exercising discretion under the contract in such a way as to deny the other party a reasonably expected benefit of the bargain. *Wells Fargo Bank v. Ariz. Laborers*, 38 P.3d 12, 28 (Ariz. 2002). "[B]ecause a party may be injured when the other party to a contract manipulates bargaining power to its own advantage, a party may nevertheless breach its duty of good faith without actually breaching an express covenant in the contract." *Id*. at 29. Thus, to survive the motion to dismiss, the Defendant's counterclaim must contain sufficient factual matter to plausibly show that the Plaintiff prevented the Defendant from receiving the expected benefits of the Membership Agreement in bad faith.

The Defendant's counterclaim specifically alleges that the Defendant entered into the Membership Agreement with the Plaintiff. (Doc. 16 at 10) The counterclaim also alleges that the Plaintiff breached the covenant of good faith by improperly using "quality assurance inspections" to terminate the Membership Agreement. (Doc. 16 at 28) The Defendant supports this claim by alleging that the Plaintiff (i) "scheduled the first inspection within weeks of [the Defendant] beginning operations on November 1, 2016" and (ii) violated the standard practice of scheduling inspections at least 180 days apart by

scheduling another inspection on February 11, 2017. (Doc. 16 at 12)  The Defendant also alleges that the Plaintiff conducted additional inspections in August 2017, November 2017, and February 2018, each of which was a motivating factor in the Plaintiff's termination of the Membership Agreement. (Doc. 16 at 15)  The Defendant alleges that it was harmed monetarily by each inspection, and the resulting hearings, as well as the termination of the Membership Agreement. (Doc. 16 at 15)  Accordingly, the Court finds that the Defendant has alleged facts sufficient to state a claim for breach of the covenant of good faith and fair dealing against the Plaintiff.

C. **Count III – Breach of Contract**

To maintain a claim for breach of contract, a plaintiff must demonstrate (1) the existence of a contract, (2) breach of the contract, and (3) resulting damages. *Cavan*, 182 F. Supp. 3d at 960.  As discussed, the Defendant's counterclaim specifically alleges that the Defendant entered into the Membership Agreement with the Plaintiff. (Doc. 16 at 10)  The Defendant makes a conclusory statement that the Plaintiff "repeatedly breached the parties' agreements". (Doc. 16 at 28)  However, the factual allegations set forth in the counterclaim demonstrate that the Defendant alleges that the Plaintiff breached the Membership Agreement through termination of the agreement on the basis of high Customer Complaint Ratio. (Doc. 16 at 22–23)  Specifically, the Defendant alleges that the Membership Agreement defined the corrective action for a high Customer Complaint Ratio as a fine, not termination of the Membership Agreement. (Doc. 16 at 22)  The Defendant also alleges that it suffered damages from the Plaintiff's breach of the Membership Agreement. (Doc. 16 at 28)  Therefore, the Court finds that the Defendant has set forth sufficient facts to establish a claim for breach of contract.

///
///
///
///
///

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion to Dismiss Defendant/Counterclaimant's First Amended Counterclaim (Doc. 22) is **granted in part** as to the discrimination claim in Count 1; and

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Dismiss Defendant/Counterclaimant's First Amended Counterclaim (Doc. 22) is **denied in part** as to the failure to register and unfair termination claims in Count 1, Count 2 and Count 3.

Dated this 29th day of July, 2019.

Honorable Steven P. Logan
United States District Judge